1  BETSY C. MANIFOLD (182450)
   manifold@whafh.com
2  RACHELE R. RICKERT (190634)
   rickert@whafh.com
3  WOLF HALDENSTEIN ADLER
     FREEMAN & HERZ LLP
4  750 B Street, Suite 2770
   San Diego, CA 92101
5  Telephone: 619/239-4599
   Facsimile:  619/234-4599
6
7  Attorneys for Plaintiffs
8  [Additional Counsel Listed on Signature Page]

9            **UNITED STATES DISTRICT COURT**
10       **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11  EVELYN OLIVE, STERLING KING,        )  Case No. '15CV1909 BEN WVG
    PAUL BERGER, SALLY CRNKOVICH,       )
12  JESSICA BREITBACH, MARC             )  **CLASS ACTION COMPLAINT**
    BLUMSTEIN, LOUISE ADAMS,            )  **FOR DAMAGES AND**
13  BRIAN LEVY, JOHN TRENT, TINA        )  **INJUNCTIVE RELIEF**
    GRANT, JENNIFER A. NELSON, and      )
14  ELIZABETH TWITCHELL, on behalf of   )
    themselves and all others similarly )  DEMAND FOR JURY TRIAL
15  situated,                           )
                                        )
16              Plaintiffs,             )
                                        )
17  v.                                  )
                                        )
18  BUMBLE BEE FOODS LLC,               )
    STARKIST COMPANY, TRI-UNION         )
19  SEAFOODS LLC, and KING OSCAR,       )
    INC.,                               )
20                                      )
                                        )
21              Defendants.             )
                                        )
22                                      )
                                        )
23  _____ )

24
25
26
27
28

Plaintiffs Evelyn Olive, Sterling King, Paul Berger, Sally Crnkovich, Jessica Breitbach, Marc Blumstein, Louise Adams, Brian Levy, John Trent, Tina Grant, Jennifer A. Nelson, and Elizabeth Twitchell ("Plaintiffs"), for their complaint, allege upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as follows:

## NATURE OF ACTION

1. This is an antitrust class action brought against Defendants Bumble Bee Foods LLC, StarKist Company, Tri-Union Seafoods LLC, and King Oscar, Inc. (collectively "Defendants") pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2, and Section 3 of the Clayton Act, 15 U.S.C. § 14, and California, Florida and Michigan state antitrust and unfair competition laws. This action is brought by Plaintiffs, on behalf of themselves and of Classes of persons and entities who indirectly purchased from any Defendant or current or former subsidiary or affiliate, shelf-stable packaged seafood products ("PSPs"), including tuna, crab, mackerel, oyster, salmon, sardines and shrimp during the period from and including at least January 1, 2000 through such time as the anticompetitive effects of Defendants' conduct ceases (the "Class Period").

2. Defendants have conspired to raise, fix, stabilize or maintain prices as well as allocate customers, and restrict capacity within the market for the sale of PSPs during the Class Period.

3. With slowing and stagnating growth in the PSP industry, beginning around 2000, Defendants directly coordinated the pricing and market allocation for PSPs throughout the United States. As part of this, Defendants increased prices for PSPs to record highs in spite of reduced consumer interest and falling demand. That conduct continues to this day.

## PARTIES

**Plaintiffs**

4. Plaintiff Evelyn Olive is domiciled in San Bernardino County,

- 1 -

California and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

5.     Plaintiff Sterling King is domiciled in Madison County, Alabama and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Alabama during the Class Period.

6.     Plaintiff Paul Berger is domiciled in the District of Columbia and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the District of Columbia during the Class Period.

7.     Plaintiff Sally Crnkovich is domiciled in Cook County, Illinois and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Illinois during the Class Period.

8.     Plaintiff Jessica Breitbach is domiciled in Lake County, Illinois and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Wisconsin during the Class Period.

9.     Plaintiff Marc Blumstein is domiciled in Palm Beach County, Florida and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Florida during the Class Period.

10.     Plaintiff Louise Adams is domiciled in Chippewa County, Michigan and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Michigan during the Class Period.

11.     Plaintiff Brian Levy is domiciled in Nassau County, New York and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of New York during the Class Period.

12.     Plaintiff John Trent is domiciled in Shelby County, Tennessee and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Tennessee during the Class Period.

13.     Plaintiff Tina Grant is domiciled in Salt Lake County, Utah and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in

1    the States of Utah and Arizona during the Class Period.

2        14.    Plaintiff Jennifer A. Nelson is domiciled in Bennington County,

3    Vermont and purchased PSPs, primarily canned tuna, indirectly from one or more

4    Defendants in the State of Vermont during the Class Period.

5        15.    Plaintiff Elizabeth Twitchell is domiciled in Alexandria County,

6    Virginia and purchased PSPs, primarily canned tuna, indirectly from one or more

7    Defendants in the States of Virginia and North Carolina during the Class Period.

8    **Defendants**

9        16.    Defendant Tri-Union Seafoods, LLC d/b/a Chicken of the Sea

10   International ("COTS") is a Delaware corporation with its principal place of

11   business at 4510 Executive Drive, No. 3, San Diego, CA 92121.

12       17.    Defendant King Oscar, Inc. ("KOI") is a Delaware corporation with

13   its principal place of business at 3838 Camino Del Rio North, Suite 115, San

14   Diego, CA 92108.

15       18.    Together, Defendants COTS and KOI ("Tri-Union") are wholly-

16   owned subsidiaries of Thai Union Frozen Products Public Company, Ltd. ("Thai

17   Union"), a publicly held company headquartered in Thailand.

18       19.    Defendant Bumble Bee Foods LLC, f/k/a Bumble Bee Seafoods LLC

19   ("Bumble Bee") is a Delaware corporation with its principal place of business at

20   9655 Granite Ridge Drive, Suite 100, San Diego, CA 92123.  Bumble Bee is a

21   wholly-owned subsidiary of Lion Capital, a private investment firm headquartered

22   in the United Kingdom.

23       20.    Defendant StarKist Company ("StarKist") is a Delaware corporation

24   with its principal place of business at 225 North Shore Drive, Suite 400,

25   Pittsburgh, PA 15212.   StarKist is a wholly-owned subsidiary of Dongwon

26   Enterprises Co., which is headquartered in the Republic of Korea.

27       21.    Defendants and their co-conspirators directly and through their

28   affiliated sold PSPs in the United States and in this district at artificially-inflated

prices during the Class Period.  Defendants are direct, horizontal competitors in the United States PSP market.

## AGENTS AND CO-CONSPIRATORS

22.    On information and belief, other corporations, partnerships, or business entities, currently unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraints of trade.  Various persons that are not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

23.    These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to raise prices of PSPs and the anticompetitive and unduly restrictive exclusive dealing agreements addressed in this lawsuit.  Plaintiffs reserve the right to name some or all of these entities as Defendants at a later date.

## JURISDICTION AND VENUE

24.    This Court has federal question jurisdiction pursuant to the Sherman Act, 15 U.S.C. §§ 1-7, the Clayton Act, 15 U.S.C. §§ 15, 26; 28 U.S.C. §§ 1331, 1337; and it has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) ("The Class Action Fairness Act") because sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more members of each of the Classes.

26.    Venue is proper in this district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. §§ 1391 (b)-(d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants, are licensed to do business in, are doing business in, had agents in, or are found or transact business

in California and this District.

27. This Court has *in personam* jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: transacted business in the United States, including in this District; directly or indirectly sold or marketed PSPs throughout California, including in this District; had substantial aggregate contacts with the United States as a whole, including in this District; or were engaged in anticompetitive conduct that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout California, including in this District. Defendants also have purposefully availed themselves of the laws of the United States.

28. Defendants' unlawful conduct described herein adversely affected persons and entities in California who purchased PSPs, including Plaintiffs and the Classes.

## **CLASS ACTION ALLEGATIONS**

29. Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), seeking damages, equitable and injunctive relief on behalf of the following classes:

    a. All persons and entities who resided in the United States who indirectly purchased, from any Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period for the purposes of injunctive relief under The Sherman Act (the "Sherman Act Nationwide Class")

    b. All persons and entities who resided in the United States who indirectly purchased, from any Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period for the purposes of injunctive and equitable relief under

The Cartwright Act (the "Cartwright Act Nationwide Class")

c. All persons and entities who resided in the State of California who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "California Class");

d. All persons and entities who resided in the State of Alabama who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Alabama Class");

e. All persons and entities who resided in the State of Arizona who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Arizona Class");

f. All persons and entities who resided in the District of Columbia who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "District of Columbia Class");

g. All persons and entities who resided in the State of Florida who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Florida Class");

h. All persons and entities who resided in the State of Illinois who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Illinois Class");

i. All persons and entities who resided in the State of Michigan who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the

Class Period (the "Michigan Class");

j.  All persons and entities who resided in the State of New York who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "New York Class").

k.  All persons and entities who resided in the State of North Carolina who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "North Carolina Class");

l.  All persons and entities who resided in the State of Tennessee who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Tennessee Class"); and

m.  All persons and entities who resided in the State of Utah who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Utah Class");

n.  All persons and entities who resided in the State of Vermont who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Vermont Class");

o.  All persons and entities who resided in the State of Virginia who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the Class Period (the "Virginia Class");

p.  All persons and entities who resided in the State of Wisconsin who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, PSPs during the

Class Period (the "Wisconsin Class");

30.　The Sherman Act Nationwide Class, the Cartwright Act Nationwide Class, the California Class, the Alabama Class, the Arizona Class, the District of Columbia Class, the Florida Class, the Illinois Class, the Michigan Class, the New York Class, the North Carolina Class, the Tennessee Class, the Utah Class, the Vermont Class, the Virginia Class, and the Wisconsin Class are collectively referred to herein as the "Classes."

31.　Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased PSPs directly.

32.　The Classes are so numerous that joinder of all members is impracticable.  While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each of the Classes.

33.　Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all members of each of the Classes, thereby making appropriate relief with respect to each Class as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a)　Whether the Defendants and their co-conspirators engaged in a combination and conspiracy to fix, raise, maintain or stabilize the prices of PSPs sold in the United States;

(b)　The identity of the participants of the alleged conspiracy;

(c)　The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether Defendants' alleged conduct violated the Sherman and Clayton Acts;

(e)     Whether Defendants' alleged conduct violated California, Alabama, Arizona, District of Columbia, Florida, Illinois, Michigan, New York, North Carolina, Tennessee, Utah, Vermont, Virginia, and Wisconsin state law;

(f)     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(g)     The effect of Defendants' alleged conduct on the prices of PSPs sold in the United States during the Class Period;

(h)     The appropriate relief for the Classes, including injunctive and equitable relief.

34.     Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for PSPs purchased indirectly from the Defendants and/or their co-conspirators.

35.     Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

36.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

37.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will

permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

38. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## RELEVANT MARKETS

39. The relevant geographic market is the United States. To compete effectively within the United States, Defendants and other producers of PSPs need distribution assets and relationships within the United States. PSP manufacturers and sellers located outside of the United States that lack such assets and relationships are unable to constrain the prices of PSPs and sellers that have such domestic assets and relationships.

## INTERSTATE COMMERCE

40. Defendants manufactured and/or sold PSPs in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district.

41. Defendants' business activities substantially affected interstate commerce in the United States and caused antitrust injury throughout the United States.

42. Together, Defendants have a market share of roughly 85% of the United States PSP industry. StarKist controls roughly 35-40% of the market, Bumble Bee roughly 25% and Tri-Union roughly 20%.

///

- 10 -

## ADDITIONAL FACTUAL ALLEGATIONS

### A.   Background

43.   PSPs start as raw seafood that is processed, cooked and canned for flavor, safety and to increase shelf life.  Because the animals that comprise PSPs are generally caught far out to sea, raw seafood is usually delivered to canneries or processing facilities in a frozen or refrigerated state.

44.   Seafood of acceptable quality is transferred to large ovens for "pre-cooking".  Following pre-cooking and cleaning, seafood is fed to a filling machine which transfers the seafood to cans, pouches or cups in pre-set amounts.  The containers are then closed and sealed in sealing machines.

45.   Each package has a code that identifies the plant, product, date, batch and other identifying information.  Filled and sealed packages are then cooked under pressure to make the products commercially sterile and so that they will have a long shelf-life.

46.   Defendants all sell PSPs in the United States.  StarKist, Bumble Bee and Tri-Union sell packaged tuna, clams, salmon, and sardines.  King Oscar sells sardines, tuna, cod and salmon.  Bumble Bee and Tri-Union also sell packaged crab, mackerel, oysters and shrimp.

47.   The PSP industry generates yearly sales of approximately $2.6 billion.  Tuna, the largest category of PSP by far, accounts for approximately $1.7 billion of this.

48.   Defendants collectively dominate the United States industry for PSPs, and have done so for decades.  However, since 2000, demand for PSPs have been declining for numerous reasons.

49.   However, while consumption has declined, prices have increased.  For example, average per person tuna consumption decreased from 3.5 to 2.4 pounds per person per year from 2000 to 2014, while the average price per carton of canned tuna has increased from just over $15 to roughly $40 in the same period.

50.    In a competitive environment, a decline in demand for a given product normally leads to a decline in that product's price.  However, as Defendants control the market and have agreed to restrict capacity, allocate customers, and fix prices for PSPs, the prices were set at artificially high levels.

51.    Prices for PSPs since at least 2000 were a direct result of Defendants' conspiracy to restrict capacity, allocate customers, and fix the prices of PSPs in the United States.  As a result, Plaintiffs and the Classes paid artificially-inflated prices for PSPs purchased indirectly from Defendants.

**B.    Defendants Engaged in an Anticompetitive Conspiracy**

52.    At least as early as January 2000 – and continuing to the present – Defendants Tri-Union, Bumble Bee and StarKist participated in anticompetitive communications, including telephone calls (some multiple times per day) and frequent face-to-face meetings at pre-arranged locations.  At these meetings, Defendants shared sensitive business information and entered into agreements to fix, raise, stabilize, and/or maintain the prices of PSPs sold to customers in the United States.

53.    As part of this, senior executives of Defendants met at least twice a year.

54.    At other times, senior executives of the Defendants regularly discussed prices and shared sensitive customer information.

55.    Throughout the Class Period, Defendants communicated regularly by telephone to discuss prices and sensitive customer information.  For example, during at least one telephone conversation between Bumble Bee and StarKist executives, StarKist informed Bumble Bee that StarKist and Tri-Union were in agreement to raise prices.

56.    As part of the conspiracy, Defendants discussed pricing and agreed to coordinate the timing and level of price increases for PSPs sold to customers in the United States.  Defendants also agreed to allocate customers and restrict

output capacity.

57.     Defendants had ample opportunities for collusion.   Defendants routinely attended trade shows and conferences, at which they discussed PSP pricing and other anticompetitive practices.

58.     Defendants also collaborated on projects at trade and other not-for-profit associations during the relevant period, such as the "Tuna the Wonderfish" campaign and the International Seafood Sustainability Foundation.

59.     For example, the "Tuna the Wonderfish" campaign was designed to combat declining sales of PSPs from early 2011 to early 2012.   It was unsuccessful, but it gave Defendants ample opportunity to collude to raise and fix PSP prices.   This was evidenced in a 2012 price increase in the face of falling demand.

60.     Defendants Bumble Bee and Tri-Union also cooperate on seafood processing and packaging.   Bumble Bee co-packs for the West Coast of the United States for Tri-Union in Bumble Bee's Santa Fe Springs, California plant while Tri-Union does the same for the East Coast in Lyons, Georgia.

**C.     The PSP Market Is Conducive to Collusion**

61.     The PSP market is structured and characterized in such a way as to be highly conducive to conspiracy.

62.     PSPs are commodity products which are sold to wholesale and retail stores (and, in a very few cases, directly to consumers) which in turn sell to customers such as the Plaintiffs.   There are different varieties of PSPs, but within each type of seafood, each variety is sold in similar amounts in similar sizes with similar shelf life and in similar types of packaging.   As a result, consumers such as Plaintiffs are more likely to be influenced by price when making a purchasing decision.

63.     There are numerous barriers to entry into the PSP market.   Start-up costs are very high, and access to manufacturing materials, distribution channels

and raw materials are all highly restricted.  Defendants are able to raise prices without fear of being undercut by new entrants into the market.

64.    As stated above, Defendants have roughly 80% of the market share for the United States, so almost all wholesale or retail purchasers do business with Defendants.

65.    There are no economically reasonable substitutes for PSPs.  Potential substitutes, such as fresh or frozen seafood, are generally sold raw and do not have similar shelf-lives and require preparation before consumption.

**D.    The Department of Justice Investigates Defendants**

66.    The San Francisco office of the Antitrust Division of the United States Department of Justice is currently investigating anticompetitive practices in the PSP industry.  A grand jury has been convened.  Two Defendants, Tri-Union and Bumble Bee, have publicly confirmed receipt of grand jury subpoenas.

67.    On July 23, 2015, Thai Union confirmed that "Tri-Union Seafoods LLC, operating in the United States under the brand Chicken of the Sea ha[d] received a subpoena requiring the production of relevant information to the DOJ" and that "Chicken of the Sea is cooperating fully with the investigation."

68.    On July 17, 2015, Thai Union announced it suspended a planned public stock offering.  Thai Union stated that it wanted 'additional clarity' on the investigation before proceeding with the offering.  Thai Union has notified the Securities and Exchange Commission of the suspension.

69.    On July 23, 2015, Bumble Bee acknowledged receipt of a grand jury subpoena.  Bumble Bee stated, "The Company did receive a grand jury subpoena relating to a US Department of Justice investigation into potential antitrust violations in the packaged seafood industry.  The Company is cooperating fully with the investigation."

70.    StarKist has not announced whether or not it has received a grand jury subpoena.  However, upon information and belief, StarKist has applied for and been

accepted into the DOJ's corporate leniency program.  This admittance is specifically related to Defendants' price-fixing activities and other anticompetitive conduct in violation of Section 1 of The Sherman Act in the United States PSP market.

**PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY**

71.   Defendants' anticompetitive conduct had the following effects, among others:

    a.   Price competition has been restrained or eliminated with respect to PSPs sold in the United States;

    b.   The prices of PSPs sold in the United States have been fixed, raised, maintained, or stabilized at artificially inflated levels;

    c.   Indirect purchasers of PSPs have been deprived of free and open competition; and

    d.   Indirect purchasers of PSPs paid artificially inflated prices.

72.   By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for PSPs than they would have paid in the absence of the Defendants' illegal conduct, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**FRAUDULENT CONCEALMENT AND
THE TOLLING OF THE STATUTE OF LIMITATIONS**

73.   Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct from discovery by Plaintiffs.

74.   Plaintiffs did not discover, nor could have discovered through the exercise of due diligence, the existence of the conspiracy and Defendants' and their co-conspirators' involvement in the conspiracy before July 23, 2015, when the Department of Justice's investigation became public.

75.   Because the conspiracy was actively concealed until July 23, 2015,

Plaintiffs were unaware of Defendants' and their co-conspirators' unlawful conduct.  Until that time, Plaintiffs were unaware that they were paying artificially-inflated prices for seafood.

76.   The affirmative acts of Defendants and their co-conspirators, including acts in furtherance of the conspiracy, were wrongfully concealed and conducted in a manner that precluded detection.

77.   Defendants and their co-conspirators agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal conspiracy.

78.   Defendants and their co-conspirators met and communicated secretly concerning the pricing and marketing of PSPs so as to avoid detection.

79.   Plaintiffs could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques employed by Defendants and their co-conspirators to avoid the detection of, and fraudulently conceal, their contract, conspiracy, or combination.   Defendants' conspiracy was fraudulently concealed by various means and methods, including, but not limited to, secret meetings, misrepresentations to customers, and surreptitious communications among Defendants and their co-conspirators via telephone or in in-person meetings in order to prevent the existence of written records.

80.   Because the alleged conspiracy was affirmatively concealed by Defendants and their co-conspirators until July 23, 2015, Plaintiffs had no knowledge of the alleged conspiracy or any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed.

81.   None of the facts or information available to Plaintiffs prior to July 23, 2015, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy prior to July 23, 2015.

82.   As a result of Defendants' and their co-conspirators' fraudulent

concealment of the conspiracy, the running of any statutes of limitations has been tolled with respect to Plaintiffs' claims of anticompetitive or unfair business practice conduct alleged in this Complaint.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

### (By All Plaintiffs On Behalf of The Sherman Act Nationwide Class for Injunctive Relief)

83.     Plaintiffs repeat and reassert each of the allegations contained in the preceding paragraphs as if fully set forth herein.

84.     Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy to artificially fix, raise, maintain and/or stabilize the prices of PSPs within the United States, its territories, and the District of Columbia in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

85.     Defendants' anticompetitive acts were intentionally directed at the United States market for shelf-stable packaged seafood products and had a substantial and foreseeable effect on interstate commerce by raising and fixing shelf-stable packaged seafood prices throughout the United States.

86.     The contract, combination or conspiracy had the following direct, substantial, and reasonably foreseeable effects upon commerce in the United States and upon import commerce:

   a.     prices charged to, and paid by, Plaintiffs and members of the Classes were artificially raised, fixed, maintained, or stabilized at supracompetitive levels;

   b.     Plaintiffs and members of the Classes have been deprived of the benefits of free, open and unrestricted competition in the shelf-stable packaged seafood

products market in the United States;

    c.   competition in establishing prices paid for shelf-stable packaged seafood products has been unlawfully restrained, suppressed, or eliminated;

87. Defendants and their co-conspirators' anticompetitive activities have directly and proximately caused injury to Plaintiffs and members of the Classes in the United States.

88. As a direct, foreseeable, and proximate result of Defendants' anticompetitive conduct, Plaintiffs and the Classes have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and the Classes seek injunctive relief.

## SECOND CLAIM FOR RELIEF

### Violation of Section 16720 of the

### California Business and Professions Code ("The Cartwright Act")

### (By Plaintiff Evelyn Olive on Behalf of The Cartwright Act Nationwide Class)

89. Plaintiff Evelyn Olive repeats and reasserts each of the allegations contained in the preceding paragraphs.

90. The violations of federal antitrust law set forth above also constitute violations of section 16720 of California Business and Professions Code.

91. During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of California Business and Professions Code section 16700, *et seq.*

92. Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of California Business and Professions Code section 16700, *et seq.*

93. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Nationwide Class have been injured in their business

and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.   As a result of Defendants' violation of section 16720 of California Business and Professions Code, Plaintiffs and members of the California Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 16750(a) of California Business and Professions Code.

**THIRD CLAIM FOR RELIEF**

**Violations of California Business and Professions Code § 17200**, *et seq.*

**(the "UCL")**

**(By Plaintiff Evelyn Olive on Behalf of**

**The Cartwright Act Nationwide Class)**

94.    Plaintiff Evelyn Olive repeats and reasserts each of the allegations contained in the preceding paragraphs.

95.    The violations of federal antitrust law set forth above also constitute violations of section 17200, *et seq.* of California Business and Professions Code, also known as the Unfair Competition Law (or "UCL").

96.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

97.    This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

98.    The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set

forth above; and (2) the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

99.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

100.   Plaintiffs and members of the Nationwide Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

101.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

102.    The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the California Class to pay supra competitive and artificially-inflated prices for PSPs sold in the United States. Plaintiffs and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

103.    As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff Evelyn Olive and the members of the Nationwide Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

///

///

///

**FOURTH CLAIM FOR RELIEF**

**Violation of Section 16720 of the**

**California Business and Professions Code ("The Cartwright Act")**

**(By Plaintiff Evelyn Olive on Behalf of the California Class)**

104.   Plaintiff Evelyn Olive repeats and reasserts each of the allegations contained in the preceding paragraphs.

105.   The violations of federal antitrust law set forth above also constitute violations of section 16720 of California Business and Professions Code.

106.   During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of California Business and Professions Code section 16700, *et seq.*

107.   Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of California Business and Professions Code section 16700, *et seq.*

108.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the California Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.   As a result of Defendants' violation of section 16720 of California Business and Professions Code, Plaintiffs and members of the California Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 16750(a) of California Business and Professions Code.

**FIFTH CLAIM FOR RELIEF**

**Violations of California Business and Professions Code § 17200, *et seq.***

**(the "UCL")**

**(By Plaintiff Evelyn Olive on Behalf of the California Class)**

109.   Plaintiff Evelyn Olive repeats and reasserts each of the allegations

contained in the preceding paragraphs.

110.   The violations of federal antitrust law set forth above also constitute violations of section 17200, *et seq.* of California Business and Professions Code, also known as the Unfair Competition Law (or "UCL").

111.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

112.   This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

113.   The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

114.   Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

115.   Plaintiffs and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

116.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

117.   The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the California Class to pay supra competitive and artificially-inflated prices for PSPs sold in the State of California. Plaintiffs and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

118.   As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff Evelyn Olive and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

## SIXTH CLAIM FOR RELIEF

### Violation of Sections 6-5-60, 8-10-1 and 8-10-3 of the Alabama Code

### (By Plaintiff Sterling King On Behalf of the Alabama Class)

119.   Plaintiff Sterling King repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

120.   The violations of federal antitrust law set forth above also constitute violations of sections 6-5-60, 8-10-1 and 8-10-3 of the Alabama Code.

121.   During the Class Period, Defendants and their co-conspirators engaged in a contract, agreement, arrangement or combination in restraint of competition and the free exercise of activity in the conduct of business, trade or commerce in violation of Alabama Code sections 8-10-1 and 8-10-2.

122.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Alabama Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.   As a result of Defendants'

1   violations of sections 6-5-60, 8-10-1, and 8-10-3 of the Alabama Code, Plaintiff

2   Sterling King and the other members of the Alabama Class seek such actual

3   damages plus $500 per violation, pursuant to sections 8-10-1 to 8-10-3 of the

4   Alabama Code.

## SEVENTH CLAIM FOR RELIEF

### Violation of Arizona's Uniform State Antitrust Act,

### Ariz. Rev. Stat. § 44-1401, *et seq.*

### (By Plaintiff Tina Grant on Behalf of the Arizona Class)

9    123.   Plaintiff Tina Grant repeats and reasserts each of the allegations

10   contained in the preceding paragraphs as if fully set forth herein.

11   124.   By reason of the conduct alleged herein, Defendants have violated

12   Arizona Rev. Stat. § 44-1401, *et seq.*

13   125.   Defendants entered into a contract, combination, or conspiracy

14   between two or more persons in restraint of, or to monopolize, trade or commerce

15   in the PSP market, a substantial part of which occurred within Arizona.

16   126.   Defendant established, maintained, or used a monopoly, or attempted

17   to establish a monopoly, of trade or commerce in the Relevant Markets, a

18   substantial part of which occurred within Arizona, for the purpose of excluding

19   competition or controlling, fixing, or maintaining prices in the PSP Market.

20   127.   Defendants' violations of Arizona law were flagrant.

21   128.   Defendants' unlawful conduct substantially affected Arizona's trade

22   and commerce.

23   129.   As a direct and proximate cause of Defendants' unlawful conduct, the

24   members of the Arizona Class have been injured in their business or property and

25   are threatened with further injury.

26   130.   By reason of the foregoing, the Arizona Class is entitled to seek all

27   forms of relief available under Arizona Revised Stat. § 44-1401, *et seq.*

28   ///

**EIGHTH CLAIM FOR RELIEF**

**Violation of the District of Columbia Antitrust Act,**

**D.C. Code § 28-4509(a)**, *et seq.*

**(By Plaintiff Paul Berger on Behalf of the District of Columbia Class)**

131.   Plaintiff Paul Berger repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

132.   By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-4509(a), *et seq.*

133.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within the District of Columbia.

134.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

135.   Defendants' violations of District of Columbia law were flagrant.

136.   Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

137.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

138.   By reason of the foregoing, the District of Columbia Class is entitled to seek all forms of relief available, including treble damages plus reasonable attorney's fees and costs under D.C. Code § 28-4508(a), *et seq.*

///

///

## NINTH CLAIM FOR RELIEF

**Violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.***

**(By Plaintiff Paul Berger on Behalf of the District of Columbia Class)**

139.   Plaintiff Paul Berger repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

140.   By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-3901*, et seq.*

141.   Defendants are "merchants" within the meaning of D.C. Code § 28-3901(a)(3).

142.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within the District of Columbia.

143.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

144.   Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

145.   Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

146.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

147.   By reason of the foregoing, the District of Columbia Class is entitled

to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, *et seq.*

## TENTH CLAIM FOR RELIEF

### Violation of the Florida Deceptive and Unfair Trade Practices Act,

### Fla. Stat. § 542.22(2), *et seq.*

### (By Plaintiff Marc Blumstein on Behalf of the Florida Class)

148.   Plaintiff Marc Blumstein repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

149.   By reason of the conduct alleged herein, Defendants have violated Fla. Stat. § 542.22(2), *et seq.*

150.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Florida.

151.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Florida, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

152.   Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

153.   Defendants' unlawful conduct substantially affected Florida's trade and commerce.

154.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Florida Class have been injured in their business or property and are threatened with further injury.

155.   By reason of the foregoing, the Florida Class is entitled to seek all forms of relief, including actual damages and reasonable attorney's fees and costs

under Fla. Stat. 501.211(2) , *et seq.*

## **ELEVENTH CLAIM FOR RELIEF**

### **Violation of the Illinois Antitrust Act,**

### **740 Ill. Comp. Stat. Ann. 10/3(1)***, et seq.*

### **(By Plaintiff Sally Crnkovich on Behalf of the Illinois Class)**

156.   Plaintiff Sally Crnkovich repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

157.   By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

158.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Illinois.

159.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

160.   Defendants' violations of Illinois law were flagrant.

161.   Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

162.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Illinois Class have been injured in their business or property and are threatened with further injury.

163.   By reason of the foregoing, the Illinois Class is entitled to seek all forms of relief, including treble damages, reasonable attorney's fees and costs, and injunctive relief available under 740 Ill. Comp. Stat. Ann. 10/7(2), *et seq.*

///

///

///

**TWELFTH CLAIM FOR RELIEF**

**Violation of the Illinois Consumer Fraud and**

**Deceptive Business Practices Act,**

**815 Ill. Comp. Stat. Ann. 505/10a*, et seq.***

**(By Plaintiff Sally Crnkovich on Behalf of the Illinois Class)**

164.   Plaintiff Sally Crnkovich repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

165.   By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

166.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Illinois.

167.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

168.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

169.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

170.   Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

171.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Illinois Class have been injured in their business or property and are threatened with further injury.

172.   By reason of the foregoing, the Illinois Class is entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a*, et seq.*

**THIRTEENTH CLAIM FOR RELIEF**

**Violation of the Michigan Antitrust Reform Act**

**(By Plaintiff Louise Adams on Behalf of the Michigan Class)**

173. Plaintiff Louise Adams repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

174. By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.771, *et seq.*

175. Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within Michigan.

176. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

177. Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

178. As a direct and proximate cause of Defendants' unlawful conduct, the members of the Michigan Class have been injured in their business or property and are threatened with further injury.

179. By reason of the foregoing, the Michigan Class is entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.771, *et seq.*

**FOURTEENTH CLAIM FOR RELIEF**

**Violation of the Michigan Consumer Protection Act**

**(By Plaintiff Louise Adams on Behalf of the Michigan Class)**

180. Plaintiff Louise Adams repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

181. By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, *et seq.*

182.   Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within Michigan.

183.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

184.   Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

185.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

186.   Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiff and class members' inability to protect themselves.

187.   Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

188.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Michigan Class have been injured in their business or property and are threatened with further injury.

189.   By reason of the foregoing, the Michigan Class is entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.901, *et seq.*

## FIFTEENTH CLAIM FOR RELIEF

### Violation of Section 340 of the New York General Business Law

### (By Plaintiff Brian Levy On Behalf of the New York Class)

190.   Plaintiff Brian Levy repeats and reasserts each of the allegations contained in the preceding paragraphs.

191.   The violations of federal antitrust law set forth above also constitute violations of section 340 of the New York General Business Law.

192. During the Class Period, Defendants and their co-conspirators engaged in a contract, agreement, arrangement or combination in restraint of competition and the free exercise of activity in the conduct of business, trade or commerce in violation New York General Business Law section 340.

193. Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of New York General Business Law section 340, *et seq.*

194. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the New York Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violations of section 340 of the New York General Business Law, Plaintiff Brian Levy and the other members of the New York Class seek such damages as may be permitted by law, their costs of suit and reasonable attorneys' fees, pursuant to section 340 of the New York General Business Law.

195. Pursuant to section 340(5) of the New York General Business Law, contemporaneously with the filing of this action, notice of the commencement of this civil action is being served upon the Attorney General of New York.

## SIXTEENTH CLAIM FOR RELIEF
### Violation of the North Carolina General Statutes,
### N.C. Gen. Stat. § 75-1, *et seq.*
### (By Plaintiff Elizabeth Twitchell on Behalf of the North Carolina Class)

196. Plaintiff Elizabeth Twitchell repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

197. Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the PSP Market, a substantial part of which occurred within North Carolina.

198. Defendants established, maintained, or used a monopoly, or attempted

to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

199. Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

200. As a direct and proximate cause of Defendants' unlawful conduct, the members of the North Carolina Class have been broken up, destroyed, or injured in their business or property and are threatened with further injury.

201. By reason of the foregoing, the North Carolina Class is entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, *et seq.*

## SEVENTEENTH CLAIM FOR RELIEF

**Violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.***

**(By Plaintiff Elizabeth Twitchell on Behalf of the North Carolina Class)**

202. Plaintiff Elizabeth Twitchell repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

203. By reason of the conduct alleged herein, Defendants have violated N.C. Gen Stat. § 75-1.1, *et seq.*

204. Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Utah.

205. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

206. Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

207. Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

208.   Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

209.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

210.   By reason of the foregoing, the North Carolina Class is entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

### EIGHTEENTH CLAIM FOR RELIEF

**Violation of the Tennessee Trade Practices Act,**

**Tenn. Code Ann. § 47-125-101*, et seq.***

**(By Plaintiff John Trent on Behalf of the Tennessee Class)**

211.   Plaintiff John Trent repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

212.   By reason of the conduct alleged herein, Defendants have violated Tenn. Code Ann. § 47-125-101*, et seq.*

213.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Tennessee.

214.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Tennessee, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

215.   Defendants' violations of Tennessee law were flagrant.

216.   Defendants' unlawful conduct substantially affected Tennessee's trade and commerce.

217.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Tennessee Class have been injured in their business or property and are threatened with further injury.

218.   By reason of the foregoing, the Tennessee Class is entitled to seek all forms of relief available under Tenn. Code Ann. § 47-125-101, *et seq.*

## NINETEENTH CLAIM FOR RELIEF

**Violation of the Utah Antitrust Act,**

**Utah Code Ann. § 76-10-911, *et seq.***

**(By Plaintiff Tina Grant on Behalf of the Utah Class)**

219.   Plaintiff Tina Grant repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

220.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. § 76-10-911, *et seq.*

221.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Utah.

222.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

223.   Defendants' violations of Utah law were flagrant.

224.   Defendants' unlawful conduct substantially affected Utah's trade and commerce.

225.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Utah Class have been injured in their business or property and are threatened with further injury.

226.   By reason of the foregoing, the Utah Class is entitled to seek all forms of relief, including treble damages, reasonable attorney's fees and costs, and injunctive relief available under Utah Code Ann. § 76-10-919(1), *et seq.*

227.   Pursuant to section 76-10-919(9) of the Utah Antitrust Act, contemporaneously with the filing of this action, notice of the commencement of

this civil action is being served upon the Attorney General of Utah.

## TWENTIETH CLAIM FOR RELIEF

### Violation of the Utah Consumer Sales Practices Act,

### Utah Code Ann. § 13-11-19, *et seq.*

### (By Plaintiff Tina Grant on Behalf of the Utah Class)

228.   Plaintiff Tina Grant repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

229.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. § 13-11-19, *et seq.*

230.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Utah.

231.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

232.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

233.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

234.   Defendants' unlawful conduct substantially affected Utah's trade and commerce.

235.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Utah Class have been injured in their business or property and are threatened with further injury.

///

///

///

236.   By reason of the foregoing, the Utah Class is entitled to seek all forms of relief, including actual damages or $2000 per Utah Class Member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. § 11-13-19(5), *et seq.*

### TWENTY-FIRST CLAIM FOR RELIEF

**Violation of the Vermont Consumer Fraud Act,**

**Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.***

**(By Plaintiff Jennifer A. Nelson on Behalf of the Vermont Class)**

237.   Plaintiff Jennifer A. Nelson repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

238.   By reason of the conduct alleged herein, Defendants have violated Vt. Stat. Ann. tit. 9, § 2453, *et seq.*

239.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Vermont.

240.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Vermont, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

241.   Defendants' violations of Vermont law were flagrant.

242.   Defendants' unlawful conduct substantially affected Vermont's trade and commerce.

243.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Vermont Class have been injured in their business or property and are threatened with further injury.

244.   By reason of the foregoing, the Vermont Class is entitled to seek all forms of relief, including treble damages, available under Vt. Stat. Ann. tit. 9, §§ 2465, *et seq.*

## **TWENTY-SECOND CLAIM FOR RELIEF**

### **Violation of the Virginia Consumer Protection Act,**

### **Va. Code Ann. § 52.1-200,** *et seq.*

### **(By Plaintiff Elizabeth Twitchell on Behalf of the Virginia Class)**

245.   Plaintiff Elizabeth Twitchell repeats and reasserts each of the allegations contained in the preceding paragraphs as if fully set forth herein.

246.   By reason of the conduct alleged herein, Defendants have violated Va. Code Ann. § 52.1-200, *et seq.*

247.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Virginia.

248.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Virginia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

249.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Virginia.

250.   Defendants' amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

251.   Defendants' unlawful conduct substantially affected Virginia's trade and commerce.

252.   Defendants' conduct was willful.

253.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Virginia Class have been injured in their business or property and are threatened with further injury.

254.   By reason of the foregoing, the Virginia Class is entitled to seek all forms of relief, including treble damages or $1000 per violation, whichever is greater, plus reasonable attorney's fees and costs under Va. Code Ann. § 59.1-

1  204(A) , *et seq.*

2  **TWENTY-THIRD CLAIM FOR RELIEF**

3  **Violation of the Wisconsin Antitrust Act,**

4  **Wis. Stat. Ann. § 133.18(1)*, et seq.***

5  **(By Plaintiff Jessica Breitbach on Behalf of the Wisconsin Class)**

6  255.   Plaintiff Jessica Breitbach repeats and reasserts each of the allegations

7  contained in the preceding paragraphs as if fully set forth herein.

8  256.   Defendants entered into a contract, combination, or conspiracy

9  between two or more persons in restraint of, or to monopolize, trade or commerce

10  in the PSP Market, a substantial part of which occurred within Wisconsin.

11  257.   Defendants established, maintained, or used a monopoly, or attempted

12  to establish a monopoly, of trade or commerce in the Relevant Markets, a

13  substantial part of which occurred within Wisconsin, for the purpose of excluding

14  competition or controlling, fixing, or maintaining prices in the PSP Market.

15  258.   Defendants' unlawful conduct substantially affected Wisconsin's

16  trade and commerce.

17  259.   As a direct and proximate cause of Defendants' unlawful conduct, the

18  members of the Wisconsin Class have been injured in their business or property

19  and are threatened with further injury.

20  260.   By reason of the foregoing, the Wisconsin Class is entitled to seek all

21  forms of relief available under Wis. Stat. § 133.01, *et seq.*

22  **TWENTY-FOURTH CLAIM FOR RELIEF**

23  **Violation of the Wisconsin Deceptive Trade Practices Act,**

24  **Wis. Stat. Ann. § 100.18(1)*, et seq.***

25  **(By Plaintiff Jessica Breitbach on Behalf of the Wisconsin Class)**

26  261.   Plaintiff Jessica Breitbach repeats and reasserts each of the allegations

27  contained in the preceding paragraphs as if fully set forth herein.

28  262.   By reason of the conduct alleged herein, Defendants have violated

- 39 -

Wis. Stat. Ann. § 100.18(1), *et seq.*

263.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Wisconsin.

264.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

265.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Wisconsin.

266.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

267.   Defendants' unlawful conduct substantially affected Wisconsin's trade and commerce.

268.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Wisconsin Class have been injured in their business or property and are threatened with further injury.

269.   By reason of the foregoing, the Wisconsin Class is entitled to seek all forms of relief, including actual damages plus reasonable attorney's fees under Wis. Stat. Ann. § 100.18(11), *et seq.*

### **PRAYER FOR RELIEF**

Accordingly, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully request that:

a.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2)-(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

b.     The unlawful conduct alleged herein be adjudged and decreed in violation of Sections 1 of the Sherman Act; Section 3 of the Clayton Act; the Cartwright Act; the UCL; the Alabama Code, the Arizona Uniform State Antitrust Act, the District of Columbia Antitrust Act, District of Columbia Consumer Protection Procedures Act, the Florida Deceptive and Unfair Trade Practices Act, the Illinois Antitrust Act,  the Illinois Consumer Fraud and Deceptive Business Practices Act, the Michigan Antitrust Reform Act, the Michigan Consumer Protection Act, the New York General Business Law, North Carolina General Statutes, the Tennessee Trade Practices Act, the Utah Antitrust Act, the Utah Consumer Sales Practices Act, the Vermont Consumer Fraud Act, the Virginia Consumer Protection Act, the Wisconsin Antitrust Act, and the Wisconsin Deceptive Trade Practices Act;

c.     Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of such Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

d.     Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

e.     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

1       f.     Plaintiffs and the members of the Classes be awarded pre- and post-

2  judgment interest as provided by law, and that such interest be awarded at the

3  highest legal rate from and after the date of service of this Complaint;

4       g.     Plaintiffs and the members of the Classes recover their costs of suit,

5  including reasonable attorneys' fees, as provided by law; and

6       h.     Plaintiffs and members of the Classes have such other and further

7  relief as the case may require and the Court may deem just and proper.

8  **JURY DEMAND**

9       Plaintiffs, on behalf of themselves and the Classes of all others similarly

10  situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38

11  of the Federal Rules of Civil Procedure.

12  Dated: August 28, 2015          **WOLF HALDENSTEIN ADLER**

13                             **FREEMAN & HERZ LLP**

14                By:       */s/ Betsy C. Manifold*

15                      BETSY C. MANIFOLD

16                 BETSY C. MANIFOLD

17                 RACHELE R. RICKERT
               MARISA C. LIVESAY

18                 BRITTANY N. DEJONG
               750 B Street, Suite 2770

19                 San Diego, CA 92101
               Telephone:  619/239-4599

20                 Facsimile:    619/234-4599
               manifold@whafh.com

21                 rickert@whafh.com

22                 **WOLF HALDENSTEIN ADLER**

23                  **FREEMAN & HERZ LLP**

24                 FRED TAYLOR ISQUITH

25                 isquith@whafh.com
               THOMAS BURT

26                 270 Madison Avenue
               New York, New York 10016

27                 Telephone:  212/545-4600
               Facsimile:  212/545-4653

28                 burt@whafh.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

THEODORE B. BELL
tbell@whafh.com
CARL MALMSTROM
malmstrom@whafh.com
One South Dearborn St., Suite 2122
Chicago, IL 60603
Telephone: 312/984-0000
Facsimile:   312/212-4401

Attorneys for Plaintiffs

SHELF.STABLE.SEAFOOD:22108.complaint